UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BEE YANG,

No. 14-11329

Plaintiff,

Magistrate Judge R. Steven Whalen

v.

COMMISSIONER OF
SOCIAL SECURITY,

Defendant.

_____/

## OPINION AND ORDER

Plaintiff Bee Yang brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. The parties have filed cross motions for summary judgment. For the reasons set forth below, Defendant's Motion for Summary Judgment [Dock. #15] is DENIED and Plaintiff's Motion for Summary Judgment [Dock. #11] is GRANTED to the extent that the case is remanded to the administrative level for (1) reconsideration of whether Plaintiff experiences a "severe" impairment and, (2) obtaining a qualified medical opinion on the issue of equivalence.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB on August 30, 2011, alleging disability as of June 7, 2011 (Tr. 107). Upon denial of the claim, Plaintiff requested an administrative hearing, held

-1-

November 7, 2012 in Oak Park, Michigan (Tr. 23). Administrative Law Judge ("ALJ") Patricia S. McKay presided (Tr. 23). Plaintiff, represented by William Michael White testified (Tr. 31-40), as did Vocational Expert ("VE") Kelly Stroker (Tr. 41-49). On January 9, 2013, ALJ McKay found that Plaintiff was not disabled on the basis that she did not experience any severe impairments lasting for 12 consecutive months (Tr. 15, 19). On February 27, 2014, the Appeals Council denied review (Tr. 1-3). Plaintiff filed suit in this Court on March 31, 2014.

## II.   BACKGROUND FACTS

Plaintiff, born June 5, 1964, was 49 at the time of the administrative decision (Tr. 19, 107). She completed 2nd grade and performed production work before the alleged onset of disability (Tr. 135). She alleges disability as a result of back pain, kidney problems, dizziness, and "balance issues" (Tr. 134).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony, with the help of a translator:

She lived in Warren, Michigan with her husband and son (Tr. 31). In her birth country of Laos, she attended elementary school (Tr. 32). After coming to the U.S., she tried, but was unable to learn English (Tr. 32). She last worked in 2011 as an assembler and spray painter (Tr. 32-33). Her inability to speak English did not prevent her from performing her former work (Tr. 34). Before working as an assembler, she held an assembly line job involving welding (Tr. 34).

Plaintiff stopped working after kidney and balance problems prevented her from

-2-

standing for long periods (Tr. 34). She experienced "non-stop" back and kidney pain (Tr. 35). She was limited to standing for "less than an hour," and afterward, she needed to "relax and take medication" (Tr. 35). Her pain was intolerable without medication (Tr. 35). Walking for more than 20 minutes increased her back and kidney pain and also caused bilateral leg pain (Tr. 36). She shopped at a nearby grocery store when others were not at home, but was unable to carry even a gallon of milk (Tr. 36-37). She currently took Tylenol 3, Vitamin D, and an anti-dizziness medication (Tr. 37).

Plaintiff had been examined by a psychologist because her medical condition and pain medication affected her mental condition and also because she was seeking U.S. citizenship (Tr. 38). She was currently a permanent resident alien (Tr. 38). In response to questioning by the ALJ, Plaintiff stated that she did not remember performing work as a home aide in 2006 (Tr. 40). Her former production jobs did not require her to lift more than five pounds (Tr. 40).

### B. Medical Records

### 1. Treating Records

January, 2011 treating notes state that Plaintiff experienced dizziness, nausea, and vomiting (Tr. 218). Beginning on June 8, 2011, Plaintiff was hospitalized for 13 days after being diagnosed with acute renal failure (Tr. 179, 191, 228). At the time of the admittance, Plaintiff reported (through a translator) dizziness for the previous three days (Tr. 197). A PermCath for renal insufficiency was inserted during the hospitalization (Tr. 202, 215). Plaintiff was also diagnosed with "mildly severe esophagitis" (Tr. 208). A CT of the brain

-3-

was unremarkable (Tr. 212).   On June 29, 2011, Youssef S. Rizk, D.O. removed the PermCath (Tr. 213).  July 8, 2011 and August 11, 2011 treating notes state that Plaintiff was "still weak" (Tr. 220-221).  On August 22, 2011, Plaintiff requested a letter stating that she was unable to work (Tr. 221, 240).  She reported upper and lower back pain (Tr. 221).  The following month, she reported continued dizziness, back pain, and leg pain (Tr. 250). January, 2012 treating records by Yongyuth Seniamai, M.D. state that Plaintiff experienced anxiety and continued dizziness (Tr. 273).  Plaintiff was prescribed Flexeril for back pain (Tr. 273).  A February, 2012 x-ray showed "questionable mild scoliosis" but was otherwise normal (Tr. 278).  An x-ray of the shoulder showed no abnormalities (Tr. 279).  May and July, 2012 records show that Plaintiff reported dizziness (Tr. 272).  September, 2012 treating notes by Dr. Seniamai show that Plaintiff was prescribed Ultram for back pain (Tr. 271). Plaintiff reported symptoms of depression (Tr. 271).

### 2.  Consultative and Non-Examining Sources

In November, 2011, Ernesto Bedia, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of ongoing back pain with only temporary relief from medication (Tr. 254).  Dr. Bedia observed that Plaintiff's gait was stable (Tr. 255).  Neurological testing was negative for abnormalities (Tr. 255).  Plaintiff exhibited a full range of motion (Tr. 256).

In June, 2012, psychologist Diana M. Yurk, Ph.D. diagnosed Plaintiff with mental retardation, major depressive disorder, and a generalized anxiety disorder (Tr. 263, 268-269). Dr. Yurk opined that Plaintiff's condition was caused by "traumas she endured during

-4-

childhood" including observing "people being shot during the war," seeing "dead bodies" and . . . educational deprivation" (Tr. 264). Dr. Yurk noted that "[e]ven with coaching," Plaintiff failed the written test to obtain a driver's license 10 times before finally passing (Tr. 266).

### C. VE Testimony

VE Kelly Stroker classified Plaintiff's former jobs as a production assembler and machine tender as unskilled and exertionally light[1] (Tr. 42). The ALJ posed the following question, describing a hypothetical individual of Plaintiff's age, education, and work experience,:

> The work needs to be simple, routine work, very simple, one or two steps. And, the work needs to be learned by demonstration . . . . With those limitations, would this hypothetical claimant be able to perform either of these two jobs with Ms. Yang, either as she performed them, or as generally performed in the national economy?

(Tr. 43). Based on the hypothetical limitations, the VE found that the individual would be able to perform Plaintiff's past relevant work (Tr. 43). However, she testified that if the above limitations were amended to preclude workplace hazards such as "dangerous moving machinery or unprotected heights," the past work would be precluded (Tr. 43). She found

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

that the added restrictions would nonetheless allow for the exertionally light, unskilled work of a bench assembler (1,500 jobs in the regional economy), inspector (1,000); or packager (1,000) (Tr. 43-44). The VE added that the jobs were limited to occasional climbing, crouching, crawling, kneeling, stooping, and bending and allowed for a "sit/stand" option (Tr. 44-45). The VE testified that if the hypothetical individual were limited to sedentary work she could perform the work of a (sedentary) assembler (1,000) or inspector (1,000) (Tr. 45-46). The VE stated that the need for four unscheduled work breaks each day would preclude all work (Tr. 46).

The VE found that if Plaintiff's testimony were fully credited, she would be limited to sedentary work with a sit/stand option (Tr. 47). She stated her testimony was consistent with the information found in the *Dictionary of Occupation Titles* (Tr. 47). In response to questioning by Plaintiff's attorney, the VE stated that the job of unskilled inspector would not require the hypothetical individual to communicate in English (Tr. 47-48).

### D. The ALJ's Decision

At Step One of her determination, ALJ McKay found that Plaintiff had not engaged in substantial gainful activity since June 7, 2011 (Tr. 14). At Step Two the ALJ found that Plaintiff experienced the medically determinable impairments of "acute renal insufficiency, status post operation PermCath removed; esophagitis; gastritis; granulomatous rosaceae; high cholesterol; low vitamin D; borderine hypertension and early osteopenia" but found that none of the impairments "significantly limited (or [was] expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months" (Tr. 15).

-6-

In support of her determination, the ALJ noted that while Plaintiff experienced acute renal insufficiency in June, 2011, the condition resolved within 12 months (Tr. 16). The ALJ cited consultative examination observations of a full range of back motion and the ability to "toe, heel and tandem walk" with a stable gait (Tr. 16-17). The ALJ noted that while Plaintiff complained of back pain as recently as September, 2012, her complaints "were not specific" (Tr. 17). The ALJ also noted that Plaintiff had not received "any narcotic pain relieving medication" for her condition, "further suggesting that the pain was not inhibiting [her] ability to work" (Tr. 17).

The ALJ rejected Dr. Yurk's finding that Plaintiff was disabled as a result of mental retardation, noting that Plaintiff "extensive work history" belied the claim that her intellectual deficiencies precluded unskilled work (Tr. 17). The ALJ found that Plaintiff did not experience any limitation in activities of daily living or social functioning (Tr. 18). She found that Plaintiff experienced "mild" limitation in concentration, persistence, or pace (Tr. 18).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ.  *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at

-8-

step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A.  The Step Two Determination

Plaintiff disputes the ALJ's finding that none of the Step Two "severe" impairments ("acute renal insufficiency, status post operation PermCath removed; esophagitis; gastritis; granulomatous rosaceae; high cholesterol; low vitamin D; borderine hypertension and early osteopenia") lasted or would be expected to last 12 months. *Plaintiff's Brief,* 6-12 (*citing* Tr. 14-15); 42 U.S.C. §423(d)(1)(A).  She also faults the ALJ for omitting dizziness altogether from the Step Two impairments.   Plaintiff argues that the medical records created more than a year after the June, 2011 alleged onset of disability show that she continued to experience dizziness and significant back and leg pain.  *Id.* at 6-8.She also argues that the ALJ gave short shrift to Dr. Yurk's finding of psychological and cognitive limitations,  noting that such impairments would be expected to last more than 12 months.  *Id.* at 8-12.

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS,* 773 F.2d 85, 89 (6th Cir.1985). An impairment can be considered "not severe ... only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Id.,* 773

F.2d at 90 (*citing Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)).  A non-severe impairment is defined as one that does not "significantly limit [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  The same regulation defines "basic work activities" as "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting."  § 404.1521(b).

A finding that the claimant does not experience any "severe medically determinable physical or mental impairment" that meets the 12-month durational requirement, or, "a combination of impairments that is severe and meets the duration requirement" directs a non-disability finding.  20 C.F.R. § 404.1520(a)(4)(ii); *See Colvin v. Barnhard,* 475 F.3d 727, 730 (6th Cir. 2007)("If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates").

The ALJ's rationale for finding that "dizziness" was not a severe impairment relies on an erroneous reading of the record.  To be sure, the ALJ noted that  Plaintiff's claims of ongoing dizziness were not supported by "medical signs or findings" (Tr. 14).  The ALJ observed that a CT scan of the brain was negative for abnormalities (Tr. 14-15).  However, the ALJ did not consider that the dizziness resulted from medication side effects.   Her finding that Plaintiff "did not receive any narcotic pain relieving medication" is undermined by medical records showing that Plaintiff was prescribed Ultram on a least one occasion[2] (Tr.

---

[2]
September, 2012 treating records show that Plaintiff was prescribed Ultram (Tr. 271). "Ultram (tramadol)" is described as "a narcotic-like pain reliever. . . .  used to treat moderate

17, 271).   While there is some dispute as to whether Ultram is a "narcotic," like a narcotic, it is a prescribed medication to relieve moderate to severe pain.  *See fn 2, below.*   Moreover, the side effects of Ultram mimic those of narcotic pain medication.  *Id.*   While none of the objective studies conclusively show that the dizziness was caused by an underlying medical condition, dizziness is listed as one of the common side effects of Ultram.  The ALJ's failure to note the Ultram use or its side effects invalidates the rejection of the allegations of dizziness.  An ALJ's credibility determination requires consideration of "[t]he type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms" SSR 96-7p, 1996 WL 374186 (June 2, 1996); 20 C.F.R. § 404.1529(c)(3)(iv).  Because the ALJ did not consider Plaintiff's Ultram use and its side effects,  a remand for further analysis is warranted.

Further, the omission of either cognitive or psychological limitations from the Step Two findings provides independent grounds for remand.  The ALJ cited several reasons for rejecting Dr. Yurk's June, 2012 diagnoses of mental retardation, depression, and anxiety (Tr. 17).   The ALJ found that it was "unclear" whether Dr. Yurk understood the criteria for disability under SSA standards (Tr. 17).   The ALJ noted that Dr. Yurk did not "have a treating relationship . . . and did not have full access to [Plaintiff's] medical records" (Tr. 17).

---

to_severe pain." http://www.drugs.com/ultram.html (last visited August 21, 2015).  Side effects include nausea, vomiting, lightheadedness, dizziness, and drowsiness. http://www.webmd.com/drugs/2/drug-11276/ultram-oral/details#side-effects (last visited August 21, 2015).

The ALJ found that Dr. Yurk's findings were not consistent with Plaintiff's "activities of daily living," included the ability to "drive, care for her personal hygiene, do light cooking, and shop" (Tr. 17). The ALJ noted that Plaintiff's "extensive work history" also undermined Dr. Yurk's disability findings (Tr. 17).

Because Dr. Yurk was a consultative rather than treating source, her opinion is "entitled to no special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994). However, the ALJ's reasons for rejecting Dr. Yurk's opinion are not wholly satisfactory. The fact that Dr. Yurk was unaware of the criteria for disability under SSA standards does not undermine Wechsler Individual Achievement Scale-III ("WIAS-III") results consistent with a diagnosis of mental retardation (Tr. 263, 268-269). The treating records showing reports of anxiety and depression are consistent with Dr. Yurk's finding that Plaintiff experienced both conditions (Tr. 271, 273). As Plaintiff notes, there is no support for the ALJ's finding that Dr. Yurk did not have access to Plaintiff's medical records. *Plaintiff's Brief* at 9. Moreover, it is unclear how access to the treating records would have changed the WAIS-III results or Dr. Yurk's psychological diagnoses. The ALJ's omission of any cognitive or psychological impairment at Step Two is particularly questionable, given that Dr. Yurk's findings that Plaintiff experienced long term psychological problems stemming from childhood traumas is uncontradicted by any other evidence. While the ALJ did not err in noting that Plaintiff had an "extensive" work history, she did not resolve the question of whether the cognitive and psychological conditions would create some degree of workplace limitation. Because the evidence shows that

Plaintiff's allegation of long term cognitive and psychological limitation was not "totally groundless," the Step Two omission constitutes error. *Farris, supra,* 773 F.2d at 89.

### B.  Whether Plaintiff' Conditions Equaled a Listed Impairment

Plaintiff's argues further that the medical evidence did not contain an opinion relating to whether she medically equaled an impairment listed in 20 C.F.R. part 404, Subpart P, Appendix 1. *Plaintiff's Brief* at 13.

Plaintiff is correct that at Step Three, "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge ... must be received into the record as expert opinion evidence and given appropriate weight." SSR 96–6p, 1996 WL 374180, *3 (July 2, 1996); *See also Pizzo v. Commissioner of Social Sec.*, 2014 WL 1030845, *19 (E.D.Mich. March 14, 2014) (*relying on Stratton v. Astrue*, 987 F.Supp.2d 135, 147-148 (D.N.H. 2012)) ("While the ALJ did not rely on the opinion of the SDM, which would have been wholly improper, the lack of any medical opinion on the issue of equivalence is still an error requiring remand").

Defendant concedes that the medical transcript does not contain an equivalency opinion, but points out that the ALJ was not required continue the sequential analysis to Step Three after finding that Plaintiff was not disabled at Step Two. *Defendant's Brief,* 13-14, *Docket #15*; §404.1520(a)(4)(ii); *See Colvin, supra,* at 730.   However, because the evidence points to the finding of at least one severe impairment, the  analysis should properly continue to Step Three for consideration of whether Plaintiff's condition(s) meet

or medically equal a listed impairment. Thus, upon remand, the ALJ will obtain a qualified medical opinion as to whether Plaintiff's conditions medically equal a listed impairment.

Because the above-discussed mistakes constitute reversible error, a remand is required. However, because the present transcript shows less than an "overwhelming" case for disability, the the Plaintiff is not automatically entitled to an award of benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir.1994). Rather, the case will be remanded for further administrative proceedings consistent with this Opinion.

## VI.   CONCLUSION

For these reasons, Defendant's motion for summary judgment [Dock. #15] is DENIED and Plaintiff's motion for summary judgment [Dock. #11] is GRANTED to the extent that the case is REMANDED to the administrative level for (1) reconsideration of whether Plaintiff experiences a "severe" impairment and, (2) obtaining a qualified medical opinion on the issue of equivalence.

Judgment for Plaintiff will be entered.

 IT IS SO ORDERED.

                              /s/R. Steven Whalen_____
                              R. STEVEN WHALEN
                              UNITED STATES MAGISTRATE JUDGE

Date: August 24, 2015


Certificate of Service

I certify that a copy of this order was served upon parties of record on August 24, 2015 via electronic or postal mail.

                              /s/A. Chubb_____
                              CASE MANAGER

-14-